676 A.2d 1217

**COMMONWEALTH of Pennsylvania**

v.

**James YEDINAK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1995.

Filed April 11, 1996.

Reargument Denied June 21, 1996.

354

John R. Sobota, Assistant Public Defender, Wilkes–Barre, for appellant.

Peter Paul Olszewski, Jr., District Attorney, Nanticoke, for Commonwealth, appellee.

Melissa A. Berlot, Assistant District Attorney, Nanticoke, for Commonwealth, appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from a March 9, 1995 judgment of sentence for driving under the influence of a controlled substance [1] and possession of a small amount of marihuana.[2] Appellant, James Yedinak, raises the following issues for our review:

> I. [WHETHER] THE COURT ABUSED ITS DISCRETION IN DENYING [APPELLANT'S] MOTION TO SUPPRESS EVIDENCE IN THAT NO PROBABLE CAUSE EXISTED TO JUSTIFY A SEARCH OF [APPELLANT'S] VEHICLE AND THE SEARCH CONDUCTED BY [THE] POLICE OFFICER WAS BEYOND THE SCOPE OF [APPELLANT'S] CONSENT?
>
> II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING AND CONSIDERING THE TESTIMONY OF OFFICER ROBERT J. WEISS, A

---

1. 75 Pa.C.S. § 3731(a)(2).
2. 35 P.S. § 780–113(a)(31).

NON EXPERT WITNESS WHO OPINED THAT [AP-PELLANT], JAMES YEDINAK, WAS UNDER THE IN-FLUENCE OF MARIHUANA TO A DEGREE [THAT] HE WAS INCAPABLE OF SAFE DRIVING WHEREIN THE POLICE OFFICER LACKED SUFFICIENT EX-PERTISE TO PROVIDE SUCH AN OPINION?

III. [WHETHER] THE COMMONWEALTH OF PENNSYLVANIA DID NOT PROVE BEYOND A REA-SONABLE DOUBT THAT [APPELLANT], JAMES YEDINAK, WAS UNDER THE INFLUENCE OF MAR-IHUANA TO A DEGREE THAT RENDERED HIM IN-CAPABLE OF SAFE DRIVING AND AS SUCH THE COURT'S VERDICT WAS BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE WEIGHT OF THE EVIDENCE IN THAT NO COMPETENT EVIDENCE WAS PRESENTED TO PROVE THAT [APPELLANT] WAS UNDER THE INFLUENCE OF MARIHUANA AND THAT [APPELLANT'S] DRIVING ABILITY WAS IMPAIRED BECAUSE HE WAS UNDER THE INFLU-ENCE OF MARIHUANA?

*See* Appellant's Brief at 3.

On April 20, 1994, at approximately 7:00 p.m., Officer Rob-ert Joseph Weiss observed appellant walk with great difficulty from a public telephone to his vehicle. Once appellant began driving, he hit two construction barrels in a closed lane, and then drove in the middle of the roadway. As a result of appellant's erratic driving, Officer Weiss ordered appellant to pull over his vehicle. During the subsequent questioning, appellant was very disoriented and unable to understand instructions. Officer Weiss then tried to administer field sobriety tests, but had to discontinue the tests because appel-lant was unable to walk and repeatedly collapsed. Officer Weiss then arrested appellant for driving under the influence of a controlled substance. After arresting appellant, Officer Weiss requested and received appellant's consent to search his vehicle for drugs. During the search, Officer Weiss discover-ed marihuana in a cigarette pack and in a cough drop box, and the remains of a marihuana cigarette in the ashtray. At trial,

Officer Weiss testified that, in his opinion based upon his training and experience, appellant was unable to operate his vehicle in a safe manner.

Sergeant Michael A. Moravec also observed appellant during the field sobriety tests and testified that appellant fell out of his car and required Officer Weiss' assistance to stand up. In addition, Sergeant Moravec testified that "[i]t was obvious [appellant] was under the influence of something and he reaked [sic]." N.T. 1/27/95 at 19–20. Mr. George Hockenbury, a medical technician, testified that the urine sample obtained from appellant on the night of the incident tested positive for marihuana.[3]

Thereafter, appellant was charged with driving under the influence of a controlled substance and possession of a small amount of marihuana. Appellant filed a motion to suppress the marihuana, which the trial court denied following a hearing on January 23, 1995. After a bench trial on January 27, 1995, appellant was found guilty of both charges. On March 9, 1995, appellant was sentenced to thirty (30) days to one (1) year incarceration. This timely appeal followed.

Appellant first argues that the trial court improperly denied appellant's motion to suppress the marihuana because no probable cause existed to conduct a search of appellant's car, and because the search conducted was beyond the scope of appellant's consent.

When reviewing an order entered by the suppression court, we must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Burnside*, 425 Pa.Super. 425, 429, 625 A.2d 678, 680 (1993). Where the evidence has not been suppressed, it is our duty to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as fairly remains uncontradicted.

3. Appellant's urine also tested positive for Benzodiazepine, Alprazolam, and Hydrocodone. However, the Commonwealth did not offer any evidence regarding the effect of these drugs on appellant.

*Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986). When evidence supports the trial court's findings of fact, we will not reverse unless the conclusions drawn from those facts are erroneous. *Commonwealth v. Quiles*, 422 Pa.Super. 153, 156, 619 A.2d 291, 292 (1993) *(en banc )*.

Appellant first claims that the search of his vehicle after his arrest was not supported by probable cause and exceeded the scope of his consent.[4]

 It is well established that the government may search a vehicle without a warrant or probable cause if the owner of the vehicle voluntarily consents to the search. *Commonwealth v. Danforth*, 395 Pa.Super. 1, 576 A.2d 1013, 1022 (1990), *appeal granted,* 526 Pa. 647, 585 A.2d 467 (1990), *affirmed sub nom., Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992). Furthermore, the scope of a search is generally limited to the areas where the object of the search may be found, but the party consenting to a search may restrict authorization to defined areas. *Commonwealth v. Parker*, 422 Pa.Super. 393, 401, 619 A.2d 735, 739 (1993). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297, 302 (1991).

 In the present case, both Officer Weiss and Sergeant Moravec smelled a strong odor of marihuana in appellant's vehicle and on appellant. After Officer Weiss informed appellant that the officers wished to search his vehicle specifically for drugs, appellant consented to the search. With appellant's general consent, the officers were free to search any containers within the vehicle that could reasonably contain narcotics, such as the cigarette pack and the cough drop container in which marihuana was found. *See Jimeno, supra* (suspect's general consent for an officer to search his vehicle for narcot-

4. Appellant does not maintain that his consent was given involuntarily.

ics included permission to open a closed brown paper bag on the floor of the car); *United States v. Snow*, 44 F.3d 133, 135 (2d Cir.1995) (one who consents to a search of a car "should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined"); *United States v. Kim*, 27 F.3d 947 (3d Cir.1994) (suspect's consent for an officer to search his luggage for drugs included authorization to open sealed containers within the luggage), *cert. denied*, —— U.S. ——, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995). Consequently, as the marihuana in appellant's vehicle was discovered within the scope of a lawful search, we will not upset the trial court's decision to deny appellant's motion to suppress.[5]

Appellant next contends that the trial court erred in admitting Officer Weiss's testimony that appellant was under the influence of marihuana to a degree that he was incapable of driving safely. Specifically, appellant asserts that this testimony was improper because the officer was not an expert witness.

 We note that the admissibility of evidence is a matter addressed to the sound discretion of the trial court, and we may reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Steele*, 522 Pa. 61, 73 n. 23, 559 A.2d 904, 910 n. 23 (1989). Moreover, this Commonwealth has adopted Federal Rule of Evidence 701, which allows testimony by a lay witness in the form of an opinion, where the opinion is (1) rationally based on the perception of the witness and (2) helpful to the determination of a fact in issue. *Commonwealth v. Neiswonger*, 338 Pa.Super. 625, 627, 488 A.2d 68, 69 (1985). In *Neiswonger*, we held that a police officer may testify to his or her opinion as to a suspect's

---

**5.** The Pennsylvania Supreme Court recently held that the Pennsylvania Constitution provides greater protection than the United States Constitution with regard to automobile searches in *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995). While *White* substantially curtails the government's ability to search an automobile without a warrant, the decision did not alter the principle that police officers may search an automobile after obtaining valid consent, and our decision in the present case is not contrary to *White*.

alcohol-induced intoxication and the suspect's ability to drive safely when the officer has observed the suspect's appearance and acts. *Id.* at 628, 488 A.2d at 69. Although this Court has never addressed whether lay opinion testimony is admissible to prove drug-induced intoxication, we find no basis upon which to distinguish opinion testimony of drug-induced intoxication from opinion testimony of alcohol-induced intoxication where the witness is personally familiar with the effects of narcotics. *See, e.g., People v. Williams,* 44 Cal.3d 883, 245 Cal.Rptr. 336, 751 P.2d 395 (1988) (if sufficient foundation is laid, lay opinion testimony as to whether a person is under the influence of narcotics is admissible), *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 237 (1988); *see also* 21 ALR 4th 905 (collecting cases).

In the instant case, Officer Weiss based his opinion that appellant was under the influence of a controlled substance on specific and articulable observations of appellant's physical appearance and behavior. Moreover, Officer Weiss's perceptions at the scene were informed by his narcotics training, prior drug arrests, and knowledge of the effects of marijuana. N.T., 1/27/95 at 14, 24–25, 32. We conclude that Officer Weiss's opinion was rationally based on his perceptions and helpful to the determination of a fact in issue and, therefore, the trial court did not err in admitting the officer's opinion testimony. *Neiswonger, supra; see Harris v. District of Columbia,* 601 A.2d 21, 24 (D.C.App.1991) (lay opinion testimony on drug impairment may be admitted at trial for driving under influence of narcotics where officer had reasonable amount of experience observing people under influence of drugs); *State v. Lesac,* 231 Neb. 718, 437 N.W.2d 517 (1989) (same); *State v. Adkerson,* 90 N.C.App. 333, 368 S.E.2d 434 (1988) (same).

Finally, appellant asserts that his conviction for driving under the influence of a controlled substance was based on insufficient evidence and against the weight of the evidence. Preliminarily, we note that the test for evaluating the sufficiency of the evidence in a criminal case is the following:

whether the evidence admitted at trial, and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish all the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Wilson,* 538 Pa. 485, 495, 649 A.2d 435, 440 (1994). Moreover, a verdict will be found to be against the weight of the evidence only when it appears from the record that the verdict was so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Parker,* 387 Pa.Super. 415, 422, 564 A.2d 246, 250 (1989), *appeal denied,* 526 Pa. 632, 584 A.2d 315 (1990).

■ In the instant case, Officer Weiss observed appellant operate his vehicle in an erratic manner. Moreover, both Officer Weiss and Sergeant Moravec testified that appellant was so impaired he could barely stand. The odor of marihuana was detected in appellant's car and on his person. Finally, a partially smoked marihuana cigarette was recovered from the ashtray in appellant's car, and appellant's urine tested positive for the presence of marihuana. Consequently, we find that there was sufficient evidence for the trial court to find appellant guilty beyond a reasonable doubt. *See Harris, supra* (circumstantial evidence could suffice to support conviction for driving under influence of drugs). Moreover, we do not find that the verdict was against the weight of the evidence, because it was not so contrary to the evidence so as to shock one's sense of justice. *Parker, supra.*

Accordingly, for the above reasons, we affirm.

Affirmed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

I dissent from the majority's conclusion that the trial court properly admitted Officer Weiss' testimony that in his opinion appellant was under the influence of a controlled substance to a degree which impaired his ability to drive safely. I also dissent from the majority's determination that the evidence

was sufficient to support appellant's conviction of driving under the influence of a controlled substance.[1]

In deciding that Officer Weiss' testimony was admissible, the majority disregarded the results of the urinalysis revealing the presence not just of marijuana but also of Alprazolam, Hydrocodone and Benzodiazepine in appellant's urine.[2] Given that Officer Weiss clearly testified that he had no knowledge whatsoever as to the nature of these additional chemicals or their possible effects upon appellant's ability to drive safely, N.T. at 45–47, Officer Weiss was not in a position to give an opinion that the source of appellant's impairment was a controlled substance.[3]

In *State v. Rifkin,* 140 Vt. 472, 438 A.2d 1122 (1981), the Vermont Supreme Court reversed a conviction for driving under the influence of a controlled substance because the non-expert arresting officer was improperly permitted to testify that in his opinion defendant was under the influence of a controlled substance, and to a degree which impaired his ability to drive safely. The Court explained that since chemicals, unlike alcohol, can cause a wide array of symptoms unknown to laypersons, only an expert could testify as to whether a defendant is under the influence of controlled substances and impaired thereby to the extent that he or she is unable to drive safely. *Id.,* 438 A.2d at 1124–1125.

I agree with the Vermont Supreme Court and would require expert testimony at least in those cases, such as the case at bar, involving chemicals in the defendant's system *other than*

1. I agree with the majority's conclusion that the appellant's car was lawfully searched pursuant to appellant's consent and that, therefore, the fruits of the search need not be suppressed.

2. The Commonwealth's expert testified that Alprazolam and Benzodiazepine are tranquilizers and Hydrocodone is an opiate pain killer or "narcotic analgesic." He also testified that each of these are available only by prescription.

3. The majority states that Officer Weiss testified that in his opinion appellant was under the influence of marijuana; however, my review of the record indicates that in fact Officer Weiss testified that he had no idea which controlled substance was influencing appellant, just that appellant appeared to be under the influence of *some* controlled substance. N.T. at 39–40.

*controlled substances.*[4] In such cases, after a proper foundation has been laid, a lay witness may testify as to his or her observations. However, a qualified expert is required to provide the connection between the symptoms observed and the drug allegedly influencing the defendant's driving. *See Rifkin, supra,* 438 A.2d at 1125.

Because I would find that the officer's opinion that appellant's impairment was due to a controlled substance should not have been admitted, I conclude that the evidence presented at trial was insufficient to sustain the appellant's conviction. The statute, 75 Pa.C.S. § 3731, does not criminalize driving in an impaired state and does not criminalize the use of controlled substances. Rather, 75 Pa.C.S. § 3731 explicitly requires a finding that the defendant's ability to drive be impaired *by a controlled substance.* The causation element of this statute which is explicit and necessary has not been proven in the instant case.

In my view, the Commonwealth failed to offer admissible testimony from which the fact finder could conclude beyond a reasonable doubt that appellant's driving was impaired by the use of marijuana, as opposed to one of the other drugs that were in his system.[5] Thus, I would reverse the judgment of sentence for driving under the influence of a controlled substance.

4. The signs of a person driving under the influence of alcohol are readily known to law enforcement personnel. They are the same whether the individual has ingested beer, wine or hard liquor. They derive from the alcohol content in the individual's body. Drugs, on the other hand, contain different chemicals, and the reaction to each of the chemicals varies markedly depending on the combination and quantity of chemicals ingested, and the individual's sensitivity to them. Thus, law enforcement personnel are not so readily able to detect the signs of a person driving under the influence of a controlled substance, and distinguish those signs from the effects of a drug which is not a controlled substance. Therefore, I find the majority's reliance on case law relating to driving under the influence of alcohol to be misplaced.

5. The Commonwealth's urinalysis expert testified that no tests were conducted to determine the quantity of marijuana in appellant's body, despite the availability of such tests. He further testified that the presence of marijuana could be detected in a marijuana user for up to thirty days after use.